Vanessa Waldref (OSB 261613)
vwaldref@singletonschreiber.com
SINGLETON SCHREIBER, LLP
1050 SW 6th Avenue, Ste. 1100
Portland, OR 97204
Tel: 503-272-7866

Meagan Dove (CA 313117) *Pro Hac Vice applicant*
mdove@singletonschreiber.com
Katie Llamas (CA 303983) *Pro Hac Vice applicant*
kllamas@singletonschreiber.com
Alexia Palacios-Peters (CA 263576) *Pro Hac Vice applicant*
apeters@singletonschreiber.com
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Tel. (619) 771-3473

Attorneys for Plaintiff JANE DOE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| JANE DOE, an individual,<br><br>Plaintiff,<br>v.<br><br>VANTAGE HOSPITALITY GROUP, INC.; VISTA HOSPITALITY, LLC; 82nd HOSPITALITY, LLC; and ROES 1 through 50.<br><br>Defendants. | Case No.:<br><br>Unlimited Jurisdiction<br><br>**COMPLAINT FOR DAMAGES AND INJURIES**<br><br>**JURY TRIAL DEMANDED**<br><br>**Damages in excess of $1,000,000** |

COMES NOW the Plaintiff JANE DOE, by and through the undersigned counsel, and respectfully submits this Complaint for damages and makes the following averments.

## INTRODUCTION

1. For decades, sex trafficking ventures have blatantly operated in and out of hotels throughout the United States.

2. For years, hotel operators and major hotel brands have made public claims that they are combatting human trafficking, while at the same time permitting their budget properties to serve as sites where sex trafficking is most prevalent and profitable. Despite awareness campaigns and public statements, sex trafficking continues to thrive in the hotel and hospitality industry.

3. Major hotel brands have made false public claims that they are "combatting human trafficking," but in stark contrast, they continue to direct their hotels to be built and/or branded where they know sex trafficking is most prevalent to profit from trafficker's room rentals and the trafficking crimes that they allow to be perpetrated on their properties. Despite major brands' public statements acknowledging the existential crisis, human trafficking continues to be most prevalent in the hotel and hospitality industry.

4. Criminals conduct their misconduct openly on hotel and motel properties throughout Oregon, and profit from providing harbor for the underlying assaults. The hotel and hospitality industry has continued to create and expand the environment for traffickers to harbor victims, neglecting to take reasonable steps to prevent such criminal misconduct, instead choosing to earn a profit at the expense of human life, human rights, and human dignity.

5. Public appearances and sponsorships do not excuse corporations and individuals that have financially benefited from sex trafficking. In fact, it reveals corporate knowledge of the use of their properties and technology as hubs for human trafficking. The hotel industry has historically and presently provided the environment, place, means, and support for the human trafficking industry to become the second largest profitable criminal



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

activity in the United States.[1]

6. The subject hotel properties—budget and mid-scale lodging establishments concentrated in Oregon and the surrounding area—were not ordinary hotels. Each was a property that functioned, by all observable evidence, as a recurring hub for drug activity, prostitution, and human trafficking. Their operators knew. Their management knew. Their staff, to the extent any were present, knew. Yet the hotels continued to operate, continued to rent rooms, and continued to profit as women and children were trafficked within their walls. For years, law enforcement agencies generated calls for service documenting crime, disorder, and trafficking indicators at these properties—records available to any diligent operator and which put the Defendants on actual, constructive, and red-flag notice of the exploitation occurring at their locations.

7. As the trafficking industry grows, so have Defendants and their profits through the expansion of their properties, rooms rented, and goods sold for this explicit and apparent purpose.

8. Defendant brand companies have been sued several times for their participation in sex trafficking ventures. Despite numerous survivors testifying that hotels were all-knowing, hotels continue to claim the sex trafficking at their properties is invisible — that they did not see it, did not know, and could not have known. In reality, it was not invisible at properties around the country and it was not invisible at the subject properties. It was seen in the endless stream of men marching to and from the same room; and criminal traffickers loitering and watching. It was seen through the constant parade of unhealthy, scared, bruised and battered women and children brought to and from the property; and excess condoms and drug paraphernalia. It was heard in the cries, the arguments, the doors slamming at all hours. It was felt in the fear that hung in those hallways and back

[1] https://www.mbfpreventioneducation.org/human-trafficking-is-now-the-second-most-profitable-criminal-activity-in-the-united-states/



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

corners. And it was ignored.

9. Sex trafficking does not happen in a vacuum. It happens in a room. A room assigned at a front desk. A room accessed by a key card. A room captured on security cameras and monitored by staff. A room cleaned, re-rented, and profited from — over and over again. It moves through lobbies and parking lots, past employees and managers, before it is sealed behind four thin walls. This crime needed a venue. Defendants willingly provided it.

10. JANE DOE files this civil lawsuit to hold Defendants accountable for the harm they caused her, as a child, when they gave her traffickers a venue to traffic her in exchange for money. Defendants each facilitated and participated in trafficking her for sex at hotels and motels they owned, operated, maintained, managed, supervised and controlled, including at the following properties:

(a) America's Best Value Inn & Suites, 4911 NE 82nd Ave, Portland, OR 97220;

(b) Cameo Hotel, 4111 NE 82nd Ave Portland, OR, 97220.

**PARTIES**

11. JANE DOE is a natural person and now an adult woman. JANE DOE is currently under the age of 40 years old. JANE DOE is a survivor of child sex trafficking. As a minor from approximately March 2014 through June 2014, when she was approximately sixteen (16) years old, she was harbored and forced to engage in commercial sex acts at two hotel and motel properties in Portland, Oregon, including the subject hotel properties identified in this Complaint. JANE DOE was a child when she was harbored, abused, and forced to engage in commercial sex acts, with grown men, for the benefit of her criminal traffickers and Defendants at Defendants' hotel and motel properties.

a. Due to the sensitive, private, and potentially retaliatory nature of these allegations, this complaint identifies JANE DOE by pseudonym and general location only. Plaintiff JANE DOE will move the court to proceed under a pseudonym in all filings, all public Court proceedings, and to limit the



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

disclosure of information about Plaintiff JANE DOE's true identity to protect Plaintiff and her identity.

b. Generally, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved may result in retaliation or harm to the Plaintiff JANE DOE.[3] For good cause, the Court may issue an order to protect a party or person from undue harms and burdens.

c. To maintain her privacy and safety, Plaintiff JANE DOE should not be compelled to disclose her identity. Plaintiff JANE DOE's privacy interest substantially outweighs the customary practice of judicial openness.[4] JANE DOE was a minor during her trafficking. Plaintiff JANE DOE escaped her trafficker and would be in danger of being forced back into trafficking, physically harmed or killed should her trafficker learn information about her through publicly filed documents in this action and learn that she is speaking out. Moreover, Defendants will not be prejudiced. Plaintiff JANE DOE will agree to reveal her identity to Defendants for the limited purpose of investigating Plaintiff JANE DOE's claims once the parties have entered into a protective order. Plaintiff JANE DOE simply seeks redaction of Plaintiff JANE DOE's personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff JANE DOE's identities in a manner that will compromise her personal life, future safety, or employment prospects, as well as her rights to privacy after being a victim of multiple sexual abuses, sexual assaults and sex trafficking.

[2] Fed. R. Civ. P. 10(a).

[3] See Doe v. Blue Cross and Blue Shield United of Wis., 112 F.3d 869, 872 (7th Cir. 1997); see also Doe v. Penzato, 2011 U.S. Dist. LEXIS 51681, *6-9 (N.D. Cal. May 13, 2011); Roe v. St. Louis Univ., 2009 U.S. Dist. LEXIS 27716, *13 (E.D. Mo. Apr. 2, 2009).

[4] See WASHINGTON cases *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (internal citation and quotations omitted).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

12. Defendant VANTAGE HOSPITALITY GROUP, INC.is a corporation that brands, instructs, controls, and contracts with branded properties for profit including, at all relevant times, Americas Best Value Inn & Suites. It is headquartered in Coral Springs, Florida. At all relevant times in 2014, VANTAGE HOSPITALITY GROUP, INC. owned, operated, managed, and/or controlled the Americas Best Value Inn & Suites located at 4911 NE 82nd Ave, Portland, OR, 97220. At all relevant times, it shared profits with franchisees and directly profited from the room rentals and goods sold for sex trafficking of a minor at its branded properties, including the subject Americas Best Value Inn & Suites.

13. Defendant VISTA HOSPITALITY, LLC is a for profit Oregon corporation with its principal place of business in Portland, Oregon. At all relevant times in 2014, VISTA HOSPITALITY, LLC owned, operated, managed, and/or controlled the Americas Best value Inn & Suites located at 4911 NE 82nd Ave, Portland, Oregon, 97220.

14. Defendant 82nd HOSPITALITY, LLC is a for profit Oregon corporation with its principal place of business in Portland, Oregon. At all relevant times in 2014, 82nd HOSPITALITY, LLC owned, operated, managed, and/or controlled the Cameo Hotel located at 4111 NE 82nd Ave, Portland, Oregon, 97220.

15. As hotel operators and controlling-entities, Defendants Vantage Hospitality Group, Inc, Vista Hospitality, LLC and Defendant 82nd Hospitality, LLC controlled the training, policies and operations for its properties, including the subject Americas Best Value Inn and Suites and Cameo Hotel, respectively, and did at all relevant times when they allowed Plaintiff JANE DOE to be trafficked for sex at their properties while she was a minor. Through each of their agency and employment relationships with the staff at the subject properties and the business relationship with the individuals who trafficked Plaintiff JANE DOE at their hotels and motels, Defendants knowingly benefited and received money from the room rentals as a direct result of their participation in a venture, which it



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

knew or should have known was engaged in sex trafficking.

16. At all relevant times, Defendants exercised control over each of their subject properties.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as ROES 1 through 50, inclusive, are presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries were proximately caused by their conduct.

18. At all relevant times, each ROE Defendant was the agent, servant, employee, partner, joint venturer, alter ego, or co-conspirator of the remaining Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and with the knowledge, permission, and consent of the other Defendants.

19. Plaintiff is informed and believes that the Roe Defendants include, but are not limited to:

- owners, operators, and managers of the subject hotel properties;
- employees, front desk staff, housekeepers, and maintenance personnel;
- security personnel and contractors;
- franchisees and franchise operators;
- corporate officers, supervisors, and decision-makers;
- property management entities; and
- other persons or entities who participated in, facilitated, enabled, ignored, or financially benefited from the trafficking venture described herein.

20. Plaintiff is further informed and believes that each Roe Defendant knowingly participated in, assisted, facilitated, enabled, permitted, ratified, or failed to prevent the



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

sex trafficking of Plaintiff occurring at the subject hotel properties, despite actual or constructive knowledge of clear indicators of trafficking and the trafficking venture that trafficked Plaintiff.

21. Plaintiff is informed and believes that each Roe Defendant participated in, directed, authorized, controlled, ratified, or otherwise caused the wrongful acts alleged herein, including acts and omissions that allowed Plaintiff's trafficking to occur and continue at the subject hotel properties.

## **JURISDICTION AND VENUE**

22. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the Trafficking Victims Protection Reauthorization Act ("TVPRA").

23. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, led to injuries that occurred in the judicial district where this action is brought.

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is deemed to reside in this judicial district, and all Defendants are registered to do business in the State of Oregon.

## **SEX TRAFFICKING UNDER FEDERAL LAW**

25. Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[5]

26. The requirements for liability under the TVPRA on a beneficiary theory can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value" (2) "from participating in a venture" (3) that the "person knew or should

[5] 18 U.S.C. §1591; 22 U.S.C. § 7102.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

27. "Sex trafficking" is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

28. The term "severe forms of trafficking in persons" includes "sex trafficking in which a commercial sex act is induced by force, fraud, or coercion, or in which the person induced to perform such act has not attained 18 years of age." 22 U.S.C. § 7102(11).

## FACTUAL ALLEGATIONS

### Trafficking of Plaintiff

29. In approximately February 2014, when Jane Doe was just about sixteen (16) years old, she met an adult man who befriended her at the park. After knowing him for just a few weeks he took her to a hotel and she woke up to another man in the hotel room. This man immediately started trafficking her out of various hotels. Upon information and belief Jane Doe was drugged and taken to a hotel.

30. Starting in approximately March 2014, Jane Doe was subjected to sex trafficking at the subject hotels listed above. She was just a sixteen (16) year old kid when her trafficking started at the subject hotels. She was just a child.

31. Plaintiff was subjected to sex trafficking at these hotels until approximately June 2014. Plaintiff's trafficker rotated her between these two subject hotels. These hotels were used by Plaintiff's trafficker for days or weeks at a time at a time, encountering the same staff with each stay.

32. Plaintiff's trafficker would take her to these hotels for the specific purpose of trafficking her to adult men.

33. Plaintiff's trafficker would use the same named hotels so often that she started to quickly recognize staff. The front desk and other staff would consistently see Plaintiff with her trafficker and would have realized they kept returning, that she was clearly underage



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

and that all the well-known red flags of trafficking and commercial sex were present.

34. Plaintiff was underage and looked very young at the time. Staff would see her going in and out of the hotel rooms and property with her trafficker. Hotel Staff would have seen Plaintiff with her much older trafficker looking young, scared and worn down.

35. Plaintiff's trafficker maintained continuous and coercive control over Plaintiff through threats against her, control over her identification, threats to kill her family, threats and intimidation of a gun and overall intimidation.

36. The force, fraud, and coercion employed by Plaintiff's trafficker to control her were systematic, sustained, and severe throughout the trafficking. They employed threats of physical violence, death threats directed at Plaintiff and her family, and psychological domination as interlocking mechanisms of control. All of this being done by an adult man toward a child.

37. Plaintiff's trafficker carried a gun. Jane Doe's trafficker made it known that he had a gun and was clear that if she left he would kill her. He routinely carried a firearm as a tool of intimidation and control over Jane Doe.

38. Jane Doe's trafficker had other girls he was trafficking as well. Upon information and belief, these other girls were also being trafficked out of these subject hotels.

39. Plaintiff was forced to have sex with grown men, as a minor, in exchange for money. These rapes and trafficking occurred daily at the subject hotels.

40. Jane Doe's trafficker took all of the money from the subject commercial sex. He used this money to pay Defendants for the use of their subject hotels in which the trafficking was occurring.

41. Jane Doe's trafficker exercised control over room reservations and the manner in which commercial sex acts were arranged and conducted at the subject hotel properties.

42. Plaintiff knew throughout her trafficking period that she would face severe physical harm and death if she did not comply with the trafficker's demands. Jane Doe was just a



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

child when she faced these very real threats.

43. Plaintiff was seen by hotel staff, visibly scared, was withdrawn, controlled and timid during interactions with hotel staff. Additionally, she was just a child, she looked young and timid when she was seen with her much older trafficker.

44. When housekeeping would come in to clean the room, Jane Doe was forced to wait in the car and then would be escorted back into the room by her trafficker after housekeeping was done. Upon information and belief, Plaintiff would have been seen being escorted to and from the rented room.

45. Upon information and belief, while staying at the subject hotels Plaintiff's trafficker would post advertisements online offering Plaintiff for commercial sex acts to take place at the hotels and communicated with buyers responding to advertisements. While staying at the subject hotel locations, Plaintiff was forced to take 8-12 dates, with grown men, per day at all hours of the day and night. She was just a girl and was rapped multiple times a day for months.

46. Each stay at the subject locations, resulted in several consistent red flags of commercial sex and trafficking, including but not limited to:

a. Paying for stays in cash, paying for extended stays on a day-today basis;
b. Requesting certain rooms away from other guests;
c. Money being exchanged with Jane Doe's trafficker and grown men, outside of the motel room;
d. Unusually large number of used condoms in the trash;
e. Unusually large numbers of male visitors going in and out of Plaintiff's room at all times during the day and night who were not registered guests;
f. Plaintiff's much older trafficker waiting outside the room and/or in the parking lot while grown men were in the room alone with Plaintiff;
g. Loud noises coming from the room in which Jane Doe was being raped in



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

as a child;

h. Jane Doe and her trafficker coming to the hotel just for hours at a time for the dates and then leaving;

i. Loud noises of abuse and other violence audible to staff and/or other rooms; and

j. A young girl with an older man, returning again and again.

47. These red flags were open and obvious to anyone working at the subject hotel locations and lasted for years.

**<u>The Hotel Industry's Role in Sex Trafficking.</u>**

48. While the term "human trafficking" incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of all illegal drugs.[6]

49. The hospitality industry plays a crucial role in the sex trade.[7] Hotels have long profited from their reputations as havens of privacy and discretion for the offending. Despite the known risks and known trafficking crimes, hotels, including the subject locations, offer anonymity and non-traceability to the traffickers, making them ideal venues for crime and sex trafficking, in particular. Hotels, including the subject hotels and owners, knowingly harbor traffickers and those trafficked, including those being trafficked as children.

50. Today, sex slavery is pervasive in the United States, and hotels are the primary

[6] Profits and Poverty: The Economics of Forced Labor. May 24, 2014. International Labor Organization. Available at: http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index htm.

[7] Cavagnaro, Giovanna L. C. 2017. Sex Trafficking: The Hospitality Industry's Role and Responsibility. Cornell University School of Hotel Administration. Available at: http://scholarship.sha.cornell.edu/honorstheses/3.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

place where it happens.[8] For years, sex traffickers have "been able to reap their profits with little risk when attempting to operate within hotels."[9]

51. According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur. Traffickers and buyers alike frequently use hotel rooms to exploit victims.

52. In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels. Additionally, hotels have been found to account for over 90% of commercial exploitation of children.

53. Due to the overall complacency, complicity, reckless disregard in addressing, and often times knowing choices of the hospitality industry not to address the known issue of sex trafficking, hotels are the venue of choice for sex trafficking. Traffickers and buyers capitalize on the hotel industry's general refusal to (1) adopt and enforce companywide anti-trafficking policies from the corporate to the property level, (2) train staff on what to look for and how to respond, and/or (3) establish safe and secure reporting mechanisms for those on the front lines.

54. Every day, at least thousands of hotel employees witness red flags and manifestations of sex trafficking and commercial exploitation. Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur and where it has been known for decades to occur.

55. In addition to their unique position in this epidemic, hotels and motels have the

---

[8] This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us- slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[9] See Human Trafficking in the Hotel Industry, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; see also Eleanor Goldberg, You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

highest obligation to protect their guests, especially children, from known dangers, including sex trafficking and sexual exploitation and should be held accountable when or if they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."

56. Estimates by attorneys for the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[10] The 2016 Trafficking in Persons Report issued by the United States Department of State also confirmed that human trafficking occurs in the hospitality industry in the United States.

57. The complicity of the hospitality industry is essential to the perpetuation of human trafficking, allowing traffickers to remain transient, collect profits, and evade detection. Sex trafficking ventures move from place to place so that they are less visible to law enforcement. Similarly, sex traffickers also want to keep their victims moving from place to place to isolate them from any possible means of escape or rescue. Traffickers are well aware of the seclusion and anonymity attendant with booking rooms with certain hotel chains and other hotels that tend to protect them, including the subject locations in this complaint— they know it is unlikely that they will be disturbed.

58. Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry since at least the early 2000s, including Defendants, on best practices for identifying and responding to sex trafficking. This started years before Plaintiff JANE DOE was trafficked at Defendants' properties as a child.

59. Multiple agencies and organizations who actively combat sex trafficking, including

[10] U.S. Dep't of State. 2016. 2016 Trafficking in Persons Report, at 387. Available at: https://www.state.gov/documents/organization/258876.pdf.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Washington Attorney General, Love 146, BEST, and EPCAT, among numerous others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[11] This was known or knowable to Defendants before and at the time Plaintiff JANE DOE was being trafficked at their properties as a young child.

60. Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of and were aware or should have been aware of at all subject times of the trafficking alleged herein, are specific to the hotel industry. These include learning to identify warning signs and indicators of sex trafficking, specifically sex trafficking of minors, at hotels and lodging, including but not limited to:

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;
- Individuals show signs of physical abuse, restraint, and/or confinement;
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;
- Individuals lack freedom of movement or are constantly monitored;
- Individuals avoid eye contact and interaction with others;
- Individuals have no control over or possession of money or ID;
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

---

[11] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

- Individuals have few or no personal items—such as no luggage or other bags;
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;
- A group of girls appears to be traveling with an older female or male;
- A group of males or females with identical tattoos, scars, or markings in similar locations. This may indicate "branding" by a trafficker;
- A group of females being controlled by one or more males;
- Being controlled by or drug abuse or frequent use of drugs such as GHB, Rohypnol, Ketamine, fentanyl, MDMA (Ecstasy), heroine, Methamphetamines, and Cocaine;
- Possession and presence of excessive sexual paraphernalia such as condoms or lubricant;
- Requesting more towels and sheets than an average guest would normally use;
- Condoms, drug paraphernalia, bondage, found in rooms or trash;
- Lack of legal identification or fake identification;
- Females with visible signs of injury, past or present;
- Non-guests coming in and out of the room at all hours of the day and night;
- Money exchanged in parking lots or common areas combined with foot traffic in and out of a room;
- Possession or use of multiple cell phones;
- Underage girls returning again and again with the same older male;
- Older men going in and out of a room in which an underage girl is staying; and
- Possession or use of large amounts of cash or pre-paid cards.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

61. The above policies and warning signs are designed to reduce sex trafficking. These "red flags" compose the standard of what hotels must look out for and know to look out for, and all of which have been known to the hospitality industry, including Defendants.

62. At all times of trafficking alleged herein, Defendants, and each of them, understood the practical and legal association between commercial sex and sex trafficking in a hotel environment, especially as it relates to minors. Defendants, and each of them, knew or should have known that signs of commercial sex or "prostitution" activity in their hotels were in fact signs of sex trafficking of a minor, and their own training materials taught the same, and each Defendant saw or should have seen signs of the sex trafficking of Plaintiff JANE DOE that were observable to Defendants. This was not hard to identify, especially considering her age. The red flags of commercial sex were obvious, trafficking was obvious, and Plaintiff's age was obvious.

63. At and before the time of JANE DOE being trafficked, Defendants, and each of them, were aware or should have been aware of these signs of sex trafficking when operating, inspecting, monitoring, controlling, and managing their hotel properties, including the subject properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

64. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to sex trafficking (especially of minors), it has become apparent that the decision of a hotel chain and hotel operators—here Defendants—to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels, is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking of a minor.

65. It is widely recognized that effective training has a substantial, positive impact on the prevalence and scope of trafficking. According to the American Hotel Lodging



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Association: "Hotel staff who have undergone training are more aware of trafficking when it happens and are more willing to report it – than those who have not been trained."

66. Thus, when hotels implement viable anti-trafficking measures, provide proper training, and enforce anti-trafficking policies, trafficking is less likely to occur, and victims are more likely to be rescued.

67. Conversely, when training is not provided and when anti-trafficking policies are not enforced, hotels and their staff are much more likely to participate in and facilitate the trafficking of victims, like Jane Doe.

68. To be truly effective, human trafficking training should be part of an ongoing education and communication program to provide hotel staff with the knowledge and support they need to ensure a safe environment for all staff and guests.[12]

69. Minor victims of sex trafficking bringing civil claims under the Trafficking Victims Protection Reauthorization Act (TVPRA) face different proof requirements than adult victims. Minors trafficked for commercial sex need not prove force fraud, or coercion. Under 18 U.S.C. § 1591(a), sex trafficking of a minor under 18 years of age constitutes a violation regardless of whether force, fraud, or coercion was used.

70. In 2022, Congress passed the Eliminating Limits to Justice for Child Sex Abuse Act, 18 U.S.C. § 2255, which eliminates the statute of limitations for survivors who were minors at the time they were trafficked and subjected to child sex abuse.

71. At all relevant times, long-standing, well known, viable standards of conduct and corporate operations were available to the hotel industry to combat, prevent, and end sex trafficking at their properties, this includes Defendants.

---

[12] Five Ways Human Trafficking Training Can Help Hotels Increase Awareness and Prevention (2020), http://hospitalitytech.com/five-ways-human-trafficking-training-can-help-hotels-increase-awareness-and-prevention



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

**<u>Vantage Hospitality Group, Inc Defendant's Control Over Vista Hospitality, LLC Defendant</u>**

72. During the relevant time period in 2014, Vantage Hospitality Group, Inc (Parent Hotel Defendant) was the parent company that owned, branded, operated and controlled the subject America's Best Value Inn & Suites located at 4911 NE 82nd Ave, Portland, Oregon that was franchised by Vista Hospitality, LLC (Hotel Location Defendant).

73. Parent Hotel Defendants, here Vantage Hospitality Group, Inc, are vicariously liable for the acts, omissions, and knowledge of their Hotel Location Defendants (franchisees), here Vista Hospitality, LLC, and staff of the locations named herein, which are Parent Hotel Defendant's actual agents or subagents.

74. Upon information and belief, it is a standard practice in the hospitality industry, followed by Vantage Hospitality Group Inc, for parent companies to set exacting brand quality standards reaching everything from the temperature at which the coffee shall be served to the number of pillows that are placed on the beds, to the types of payments accepted, to when, where, and how guests are greeted.

75. Parent Hotels Defendants provide their Hotel Location Defendants with signage on and in front of the building. This is done to assure customers that when they check in, they can expect an experience consistent with the standards of the Parent Hotel Brand. This brand logo is displayed on everything in the hotel, such as pens and paper on the bedside table and staff uniforms worn at the front desk during check-in.

76. Upon information and belief, Parent Hotel Defendant, here Vantage Hospitality Group Inc, provided their hotel branded location brand name recognition, a marketing campaign, and hotel listings in a global distribution system and other online agency databases. They also provided access to their brand-wide central reservation systems, 800 numbers, revenue management tools, brand loyalty programs, and company websites. Therefore, bookings and room reservations were primarily controlled by Parent Hotel



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Defendant, Vantage Hospitality Group, Inc.

77. Parent Hotel Defendant, Vantage Hospitality Group, Inc subjected Hotel Location Defendant and/or their franchisees to detailed standards and requirements regarding the operation of the Vista Hospitality Defendant and the subject America's Best Value Inn & Suites through franchising agreements, detailed written policies and manuals and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by Vantage Hospitality Group, Inc.

78. Upon information and belief, Parent Hotel Defendant, Vantage Hospitality Group, Inc., required their branded hotel property owners, including Vista Hospitality, LLC, to use a property management system. This system is linked to Parent Hotel Defendant's corporate network and data center. This is to, among other things, receive reservations, and process payment transactions.

79. Upon information and belief, per the relevant franchise agreements, Parent Hotel Defendant, Vantage Hospitality Group, Inc, could enforce their brand standards through periodic inspections of the subject hotel location, backed up with the ultimate threat of termination of the agreement.

**Vista Hospitality, LLC Defendant Acted as Actual Agents of Vantage Hospitality Group, Inc.**

80. Defendant Vantage Hospitality Group, Inc is vicariously liable for the acts, omissions, and knowledge of Vista Hospitality, LLC, their staff and staff of the America's Best Value Inn & Suites location named herein, which are Vantage Hospitality Group's actual agents, or subagents including employees.

81. Defendant Vantage Hospitality Group, Inc subjected the America's Best Value Inn & Suites location named herein and the franchisee owners to detailed standards and requirements regarding the operation of the subject America's Best Value Inn & Suites location through the franchising agreements, through detailed written policies and



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

manuals, and through other formal and informal protocols, directives, mandates, reporting, and expectations imposed by Defendant Vantage Hospitality Group, Inc.

82. Upon information and belief, at all times relevant herein, Vista Hospitality, LLC Defendants, were the apparent ostensible principals, principals, apparent ostensible agents, agents, apparent ostensible servants, servants, apparent ostensible staff, staff, apparent ostensible assistants, assistants, apparent ostensible consultants, and consultants of Vantage Hospitality Group, Inc Defendants and were acting as such within the course, scope and authority of said agency and employment, and that the Defendant as aforesaid, when acting as a principal or agent, was negligent, including but not limited to, in the hiring, training, retention, and supervision of each and every other as an agent, servant, employee, assistant, and consultant.

83. Defendant Vantage Hospitality Group, Inc obscured the full extent of control they exercised over their hotel locations, including the subject America's Best Value Inn & Suites, by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those polices and manuals.

84. Upon information and belief, the standards that Defendant Vantage Hospitality Group, Inc imposed on Defendant Vista Hospitality, LLC and the subject location:

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools they used at their location;
b. Covered virtually all aspects of motel operations, including internal operating functions;
c. Dictated the specific manner in which Defendant Vista Hospitality, LLC and its motel staff was required to carry out most day-to-day functions at their hotel location; and
d. Significantly exceeded what was necessary for Vantage Hospitality Group,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

Inc to protect its registered trademark.

85. Vantage Hospitality Group, Inc were in an agency relationship with Defendant Vista Hospitality, LLC. Upon information and belief, this agency relationship was created through Vantage Hospitality Group's exercise of an ongoing and systemic right of control over Vista Hospitality, LLC and the subject location, including the means and methods of how Vista Hospitality, LLC conducted daily business through one or more of the following:

a. Sharing profits;
b. Requiring Vista Hospitality, LLC to use Vantage Hospitality Group's customer rewards program;
c. Hosting online bookings on Vantage Hospitality Group's America's Best Value Inn & Suites developed, owned, and operated domain;
d. Regulating internet access for guests;
e. Setting employee wages;
f. Making decisions about employment and budgets, including for security and management;
g. Advertising for management and local positions;
h. Standardized training and methods for Vista Hospitality, LLC staff;
i. Standardized or strict rules of operation;
j. Oversight in hiring and/or terminating staff and managers;
k. Building and maintaining the America's Best Value Inn & Suites property named herein;
l. Fixing prices; and/or
m. Creating advertising campaigns and unrealistic expectations of safety for guests.

86. Vantage Hospitality Group, Inc held the subject America's Best Value Inn & Suites location named herein out to the public as possessing authority to act on their behalf



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

because they held it out to the public as one of their brand properties.

87. In addition to the ways described above, upon information and belief, Defendant Vantage Hospitality Group, Inc exercised and reserved the right to exercise systemic and pervasive control over Vista Hospitality, LLC's day-to-day operation at the subject America's Best Value Inn & Suites location named herein, including in the following ways:

a. Defendants Vantage Hospitality Group, Inc required Defendant Vista Hospitality, LLC and management to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for Vantage Hospitality Group to protect its registered America's Best Value Inn & Suites trademark;

b. Vantage Hospitality Group, Inc. provided training for hotel management and select hotel staff on-site at the subject America's Best Value Inn & Suites;

c. Vantage Hospitality Group, Inc required all subject motel staff to participate in training it created through an online learning platform it controlled and maintained;

d. Vantage Hospitality Group, Inc controlled training provided by Vista Hospitality, LLC to motel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e. Vantage Hospitality Group, Inc retained sole discretion to determine whether all training had been completed satisfactorily;

f. For certain products and services that Vista Hospitality Group, Inc were required to purchase to operate the America's Best Value Inn & Suites



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

named herein, Vantage Hospitality Group, Inc designated approved vendors and prohibited the locations from purchasing goods and services from anyone other than an approved vendor;

g. Vantage Hospitality Group, Inc required Vista Hospitality, LLC to sign a technology agreement governing the terms under which they must procure and use technical services and software while operating the America's Best Value Inn & Suites location named herein;

h. Vantage Hospitality Group, Inc set required staffing levels for the America's Best Value Inn & Suites named herein;

i. Vantage Hospitality Group, Inc established detailed job descriptions for all positions in its branded motel locations and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. Vantage Hospitality Group, Inc set requirements for the hiring process used by the America's Best Value Inn location named herein and oversaw employee discipline processes and termination decisions;

k. Vantage Hospitality Group, Inc provided benefits for staff of Vista Hospitality, LLC;

l. Vantage Hospitality Group, Inc required Vista Hospitality, LLC to use a customer resource management program maintained and operated by Vantage Hospitality Group, Inc;

m. Vantage Hospitality Group, Inc controlled channels for guests to report complaints or provide feedback regarding the subject America's Best Value Inn & Suites and directly participated in the response and/or supervised the response to customer complaints or other feedback. Vantage Hospitality Group, Inc retained the right to provide refunds or



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

other compensation to guests and to require Vista Hospitality, LLC to pay associated costs;

n. Vantage Hospitality Group, Inc generated reports and analysis of guest complaints and online reviews for the subject America's Best Value Inn & Suites location named herein;

o. Vantage Hospitality Group, Inc required Vista Hospitality, LLC to use a database that was owned, operated, and maintained by Vantage Hospitality Group, Inc to manage all guest data information. Vantage Hospitality Group, Inc could use the backend of this system to analyze and generate reports and did so;

p. Vantage Hospitality Group, Inc set detailed requirements for insurance that Vista Hospitality, LLC had to have and to bill them directly for that insurance if Vantage Hospitality Group, Inc determined that they had not purchased adequate insurance;

q. Vantage Hospitality Group, Inc regularly audited the books and records of Vista Hospitality, LLC;

r. Vantage Hospitality Group, Inc retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of any agreements if Vista Hospitality, LLC violated any of Vantage Hospitality Group's detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the America's Best Value Inn & Suites location named herein;

s. Vantage Hospitality Group, Inc conducted frequent and unscheduled inspections of its branded properties, including the America's Best Value Inn & Suites location named herein;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

t. Vantage Hospitality Group, Inc controlled all marketing for its branded properties, including the subject America's Best Value Inn & Suites and prohibited them from maintaining any online presence unless specifically reviewed and approved by Vantage Hospitality Group, Inc;

u. Vantage Hospitality Group, Inc imposed detailed recordkeeping and reporting requirements on Vista Hospitality, LLC regarding virtually all aspects of hotel operations;

v. Vantage Hospitality Group, Inc supervised and controlled day-to-day operations of the subject America's Best Value Inn & Suites named herein through detailed information and extensive reports that it obtained through a property management system and other software systems it also required Vista Hospitality, LLC to use; and

w. Vantage Hospitality Group, Inc retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of motel operations.

**Vantage Hospitality Group, Inc Knowingly Benefitted from Participation in a Venture with Each Other, Vista Hospitality, LLC and Plaintiff's Non-Hotel-Employee Trafficker**

88. Vantage Hospitality Group, Inc owned the subject America's Best Value Inn & Suites and lent their branded name and likeness to the third party owners (Vita Hospitality, LLC), while the building and operations were under the brands' supervision and control. This was done through brand standards, franchise agreements, and maintaining control over all aspects of operations. This allowed the parent brand to exchange the high risk that is inherent in owning an asset like a motel for the low risk associated with owning a property contract or franchise contract and still profit. Because of this, the subject America's Best Value Inn & Suites and its parent brand are inextricably



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

intertwined. Here, Vista Hospitality, LLC and Vantage Hospitality Group, Inc are inextricably intertwined.

89. With franchised hotels, the average customer does not see the franchisor/franchisee relationship. The parent brand gives the franchisee or individual property its identity. The parent brand provides the signage that assures customers that if they check into that hotel they can expect the standards consistent with the parent brand. The America's Best Value Inn & Suites were advertised as the branded America's Best Value Inn & Suites, not a motel owned by anyone other than its parent company. The parent company holds themselves out to the public as the owners of the properties. Brand requirements and rules are contractual with the power to control weighed heavily toward the corporate parent brand. The Brand retains control over their branded locations.

90. Upon information and belief, at all times of trafficking alleged herein, booking and room reservations were controlled by the corporate parent brand, Vantage Hospitality Group, Inc.

91. Upon information and belief, at all times of trafficking alleged herein, the franchised Vista Hospitality, LLC paid a percentage of their total revenue back to Vantage Hospitality Group, Inc and was required to develop and maintain the property in accordance with the parent brand standards as they are laid out in the franchise agreement. Vantage Hospitality Group, Inc retained the right of entry and inspection, response to crime, response to trafficking, and trainings related to the same.

92. Upon information and belief, per the agreements, Vantage Hospitality Group, Inc could enforce standards through periodic inspections and even termination of the franchise agreement if the subject franchised hotel was found to be inadequate, unsafe, or operating in violation of any laws. The right of Vantage Hospitality Group, Inc to enforce their brand standards, including safety standards, is not just their right but their responsibility. Here, upon information and belief, Vantage Hospitality Group, Inc did have employees in charge



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

of inspecting and that did inspect the properties at relevant times when plaintiff JANE DOE was being trafficked there and who did see all of the red flags of Jane Doe being trafficked (including that she was being sold as a minor for sex) and who knew or should have known that she, as well as several others, were indeed being trafficked for sex at their America's Best Value Inn & Suites location. Vantage Hospitality Group's officers, directors, managers and employees directly controlled every single aspect of operations at the subject location; and they controlled most operations with the right to end their franchising contract.

93. At all times of trafficking alleged herein, Vantage Hospitality Group, Inc dictated franchisee policies related to safety, security, human trafficking, employee training and franchisee's response to crime.

94. Upon information and belief, at all times of trafficking alleged herein, reservation information for rooms at the subject America's Best Value Inn & Suites passed through a system operated and managed by Vantage Hospitality Group, Inc.

95. Defendants profited from the sex trafficking of Plaintiff JANE DOE when they rented rooms to Jane Doe and/or her trafficker or their associates when they knew or should have known that human trafficking, of a child, was occurring due to several red flags being apparent and visible. Vantage Hospitality Group, Inc and Vista Hospitality, LLC knew Plaintiff JANE DOE was a minor and was being sold at their property for sex, and they profited from it. They saw all the red flags of a child being raped at the subject America's Best Value Inn & Suites and chose to profit from it.

96. Vantage Hospitality Group, Inc and Vista Hospitality, LLC directly benefited from the steady stream of income that Jane Doe's trafficker, and many other traffickers, brought to the subject America's Best Value Inn & Suites. They profited from each and every room that Jane Doe's trafficker rented where Jane Doe was harbored and maintained for the purpose of sex trafficking as a minor.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

97. Vantage Hospitality Group, Inc and Vista Hospitality, LLC facilitated the trafficking, of Jane Doe, through its practices, policies, and procedures. They failed to take appropriate action to prevent the trafficking of children, including Jane Doe, for sex so they could continue to profit from the room rentals, and business that trafficking brings. They accommodated Plaintiff Jane Doe's trafficker's requests, allowed cash payments for extended periods on a daily basis, allowed grown men to parade in and out despite not being guests, allowed money exchanges to take place in front of them right outside the room; and saw Jane Doe, who looked very young, being controlled by an older man, and watched and heard physical abuse and rape occurring daily while Plaintiff Jane Doe was trafficked, as a child, at the subject America's Best Value Inn & Suites for long periods of time regularly.

98. Vantage Hospitality Group, Inc and Vista Hospitality, LLC owned and operated the subject America's Best Value Inn & Suites while buyers paraded in and out of rooms rented for the purpose of trafficking and raping a child, Jane Doe. Their staff and agents observed and should have observed the buyers, grown men, parading in and out of its hotel rooms to engage in the sex trafficking of Jane Doe, a minor. Their staff and agents observed and/or should have observed the trafficking occurring regularly and for multiple days at a time at the subject hotel but allowed it so they could profit.

99. Plaintiff Jane Doe's trafficking at the subject America's Best Value Inn & Suites was a result of Vantage Hospitality Group, Inc and Vista Hospitality's participation in a venture with each other as well as Jane Doe's criminal trafficker. If Vantage Hospitality Group, Inc and Vista Hospitality, LLC had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe's trafficking at the subject hotel location and Jane Doe would not have suffered the harm she did there.

100. Despite its actual or constructive knowledge that the venture it was engaged in was



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

in violation of 18 U.S.C. §§1591(a) and 1595(a) through the conduct of motel staff and the widespread trafficking at the subject America's Best Value Inn & Suites named herein, Vantage Hospitality Group, Inc participated in the venture by continuing to associate with the motel staff and with Vista Hospitality, LLC to operate the hotel location named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. § 1591(a) including trafficking of children, like Jane Doe.

101. Vantage Hospitality Group, Inc and Vista Hospitality, LLC financially benefited from renting rooms to Jane Doe's trafficker on numerous occasions since they benefited each day that Jane Doe was forced to engage in commercial sex at the subject America's Best Value Inn & Suites for months. At all times relevant, upon information and belief, Vantage Hospitality Group, Inc benefitted during and after all were directly notified of the commercial sex and numerous red flags of the sex trafficking of Jane Doe as a minor, at the subject location through direct employee reports, customer reports, law enforcement, and the public. Vantage Hospitality Group, Inc participated in this venture through the conduct described herein as they were jointly responsible for relevant aspects of motel operations at the subject motel location.

**Vantage Hospitality Group, Inc and Vista Hospitality, LLC's Knowledge of Sex Trafficking and Sexual Assault at the Subject Location**

102. Defendants' knowledge is not limited to a general awareness of the problem of sex trafficking and sexual assault in the hotel industry. Upon information and belief Defendant Vantage Hospitality Group, Inc has known, since well before Jane Doe's trafficking, that sex trafficking was ongoing and widespread at their branded locations, including the subject location named herein.

103. Use of the branded properties for sex trafficking is well known to Defendants. Upon information and belief, before and at the time Jane Doe was trafficked at the subject property, Vantage Hospitality Group, Inc and Vista Hospitality, LLC monitored criminal



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

activity occurring at the subject branded hotel and were aware of activity indicating commercial sex, sex trafficking, and related crimes occurring at their branded hotels generally and specifically at the subject America's Best Value Inn & Suites property where Jane Doe was trafficked as a child.

104. The method of operation at the subject America's Best Value Inn & Suites named herein was consistent with trafficking operations used across hotel properties and was observable to hotel staff and management throughout Jane Doe's trafficking:

a. Rooms were registered in Plaintiff's trafficker's name, or under various identification documents depending on the circumstances, with the actual person in control clearly being the trafficker who was much older than Plaintiff;

b. Plaintiff would be forced to wait outside while her trafficker booked the room in the lobby;

c. Multiple unregistered male visitors arriving and departing from Jane Doe's room in rapid succession at all hours of the day and night, consistent with commercial sex buyer activity;

d. Plaintiff's trafficker would rent a room for days at a time but Plaintiff and her trafficker would only stay at the property for the purpose of sex trafficking. Plaintiff was forced to have up to 12 dates throughout the day/night;

e. Jane Doe appeared extremely young, physically injured, visibly distressed, malnourished, and under the coercive and violent control of her trafficker throughout her stays;

f. During their time at the America's Best Value Inn & Suites, Jane Doe was not allowed to make eye contact with anyone. She was not allowed to speak and was clearly being controlled by a much older male;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

g. Jane Doe's trafficker carried a firearm either on him or in the car while at the property and used it as a tool of intimidation and control over Jane Doe;

h. Payments for commercial sex acts were made in cash at the subject America's Best Value Inn & Suites named herein;

i. Physical evidence of violence was present and the distress of this was visible on Plaintiff throughout the trafficking period, including injuries consistent with sustained physical assault. Sex buyers were violent toward her during the sex acts and would at times leave her with injuries;

j. Upon information and belief, other females were being trafficked by Plaintiff's trafficker at this location and had been before she was trafficked there;

k. The same recurring pattern of stays, room registrations, and high-volume visitor traffic repeated at the subject America's Best Value Inn & Suites over extended periods of time, were consistent with an ongoing commercial sex trafficking operation and exploitation of children;

l. Jane Doe's trafficker loitering outside of the room while buyers were in the room with Jane Doe. The trafficker and sex buyer exchanging money right outside of the hotel room just before the sex buyer would go in to rape Jane Doe;

m. During her trafficking Plaintiff was just a child and looked like a minor. She would return again and again to the subject hotel with her older male trafficker;

n. The combination and cumulative pattern of the foregoing indicators constituted unmistakable and recognizable evidence of commercial sex trafficking that any reasonable owner, manger, or employee would have

recognized;

o. Hotel staff and management at the subject America's Best Value Inn & Suites would have recognized the trafficker and Plaintiff as returning guests over multiple months and exhibiting signs of abuse, exploitation, control, commercial sex and trafficking;

p. The America's Best Value Inn & Suites named herein would allow Plaintiff and her trafficker to return time and time again despite the obvious signs of abuse, control, exploitation, commercial sex and trafficking;

q. Commercial sex buyers returned repeatedly to the America's Best Value Inn & Suites named herein as known and recurring patrons. Jane Doe's trafficker had regular buyers and hotel staff would have recognized them as such.

105. Defendants knew their staff at the subject America's Best Value Inn & Suites property were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at their branded property, including but not limited to choosing not to implement policies and procedures known to be necessary to stop known trafficking; not requiring identification cards or IDs; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort bruised, battered and controlled women and children to rooms; allowing several buyers to come in and out of the rooms that the victims were trafficked out of without ID; ignoring yelling and screaming from rooms where trafficking took place; ignoring banging and the sounds of victims being beaten; ignoring obvious copious amounts of sex paraphernalia; not addressing the trafficking signs and reports of drugs, abuse, and prostitution; forming relationships with traffickers and treating traffickers like "regulars" with benefits by accommodating specific requests that entail



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

known signs of trafficking and not reporting the trafficking or taking any steps to prevent or stop it.

106. Upon information and belief calls for service records for the America's Best Value Inn & Suites named herein show that of calls for service to this property occurred throughout Jane Doe's trafficking. These calls involved violent crimes, domestic violence, trafficking, sexual offenses, narcotics, weapons and other nuisance calls.

107. Sex buyers were often violent with Plaintiff within the walls of the subject America's Best Value Inn & Suites. Sounds of beatings, a young girl screaming, and loud arguments should have been heard by staff and nearby guests. Employees at the America's Best Value Inn & Suites named herein didn't just hear the violence, they saw the aftermath of violence, as a young and scared girl would emerge. Sounds of rape should have been heard from the rooms in which Jane Doe was being raped in again and again by grown men.

108. Information that has become public through news stories establishes the entrenched and pervasive nature of the hotel industry's role in providing a venue where sex trafficking has continued unabated for years. Defendants have provided the means and venue necessary for traffickers to traffic victims, including children, like Jane Doe.

109. Multiple online reviews during the relevant time period and prior to put Defendants on notice. One review talks about the "escorts" in the parking lot and multiple reviews talk about the "sketchy" people and how they felt unsafe.

110. Taken together, these facts demonstrate that Vantage Hospitality Group, Inc and Vista Hospitality, LLC had actual, constructive, and red-flag notice that Jane Doe and others were being sex trafficked at this specific location. Any reasonably trained hotel or motel operator, employee, manager, and/or owner would have recognized these indicators as consistent with sex trafficking of a child.

111. Upon information and belief, multiple employees at the subject America's Best Value Inn & Suites, including management-level employees, observed, or were made



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

aware of these obvious signs of Jane Doe's trafficking while acting within the scope and course of their employment.

112. As such, Vantage Hospitality Group, Inc and Vista Hospitality, LLC knew and should have known that Jane Doe was being trafficked at the subject America's Best Value Inn & Suites location.

**Vantage Hospitality Group, Inc Facilitated the Trafficking of Plaintiff at the Subject America's Best Value Inn & Suites**

113. Upon information and belief, during the time Plaintiff was trafficked at the subject America's Best Value Inn & Suites, Vantage Hospitality Group, Inc participated directly in aspects of the operation of the subject America's Best Value Inn & Suites that influenced whether and to what extent trafficking occurred at the hotel including but not limited to the following:

a. Vantage Hospitality Group, Inc assumed responsibility and control over the human trafficking response of their subject motel property, including design and implementation of practices to prevent trafficking, safety, and security procedures, employee, and franchisee education, training and response, partnership with external organizations, and advocacy;

b. Vantage Hospitality Group, Inc retained control over when its branded hotel would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity at their branded hotel location;

c. Vantage Hospitality Group, Inc retained control over determining which hotels needed additional training or other resources on the risk of trafficking occurring and other related criminal activity;

d. Vantage Hospitality Group, Inc retained control to terminate hotel staff and/or agreements based on the response to human trafficking;



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

e. Vantage Hospitality Group, Inc determined whether training is provided, when it is provided, the content of the training, how the training is delivered, who receives it, and the consequences of a branded location and/or its employees not participating or failing to follow such training; and

f. Vantage Hospitality Group, Inc retained control over drafting, supervision, overseeing, and enforcement policies and procedures for housekeeping services, front desk services, operations and security at the subject branded location, including how often rooms must be entered, how to respond to guest refusals of entry into rooms, how to view cameras, what actions to take to deter conduct and steps to monitor guest safety issues through housekeeping services, front desk staff, and operations and security.

114. Vantage Hospitality Group, Inc were aware of the fact that its cash and lax policies were promoting sex trafficking at the subject America's Best Value Inn & Suites but chose not to implement safer parking policies, identification policies, guest policies, security policies, and human trafficking response rules. It even knowingly allowed violations of its rules to assist, facilitate, and support trafficking, which brought a constant income stream to the subject motel and Vantage Hospitality Group, Inc.

115. Upon information and belief, during the time Jane Doe was trafficked at the subject America's Best Value Inn & Suites and before, room rentals for trafficking and other illegal activity made up a large portion of the income derived at the subject location, and upon information and belief, Vantage Hospitality Group, Inc knew and should have known that room rentals for trafficking made up a large majority of the income derived at the subject location.

116. Vantage Hospitality Group, Inc participated as active and willing accomplices to sex



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

trafficking Jane Doe and several other victims at their property.

117. As a direct and proximate result of these policies and practices on the part of Vantage Hospitality Group, Inc, Jane Doe and numerous other victims of sex trafficking and exploitation have been permanently injured and damaged physically, emotionally, psychologically, and financially. Vantage Hospitality, Inc, together with Vista Hospitality, LLC, provided the venues to Jane Doe's trafficker and his associates, and aided and abetted his trafficking of her and other children.

**<u>Vista Hospitality, LLC Assisted, Supported, and Facilitated the Trafficking of Jane Doe for Sex</u>**

118. Vista Hospitality, LLC had both actual and constructive knowledge of the trafficking of Jane Doe at the hotel locations they owned and operated because the trafficking was the direct result of Vista Hospitality, LLC facilitating the trafficking at the subject location.

119. Vista Hospitality, LLC is responsible for the acts, omissions, and knowledge of all employees of the subject America's Best Value Inn & Suites, during the time of trafficking, when operating the hotel because these acts and omissions were committed in the course and scope of employment. Vista Hospitality, LLC ratified these acts and omissions because Vista Hospitality, LLC failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to the hotel industry of sex trafficking.

120. Despite having actual and/or constructive knowledge of widespread and ongoing sex trafficking at their subject location, Vista Hospitality, LLC continued renting rooms to these traffickers, including the rooms used to sexually exploit children like Jane Doe.

121. Vista Hospitality, LLC knew or were willfully blind to the fact that Jane Doe was being trafficked and, because of this, benefited from continued association with her trafficker and his associates by providing a venue in the form of hotel rooms and related



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

services to harbor and facilitate Jane Doe's sexual exploitation.

122. Vista Hospitality, LLC also facilitated widespread trafficking at their motel locations including the trafficking of Jane Doe in various ways including:

a. Allowing unreasonable, negligent and inadequate practices for hiring, training, supervising, managing, and disciplining front line staff and on-site staff regarding issues related to human trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for motel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking and exploitation of minors, according to reasonable practices, industry standards, laws, and/or applicable franchisor policies and procedures; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the motel staff and owners.

**82nd Hospitality, LLC Facilitated Trafficking of Plaintiff and Financially Benefitted**

123. 82nd Hospitality, LLC had both actual and constructive knowledge of the trafficking of Plaintiff at the subject Cameo Hotel that they owned and operated because the trafficking was the direct result of 82nd Hospitality, LLC Defendant facilitating the trafficking at the subject location.

124. 82nd Hospitality, LLC Defendant was responsible for the acts, omissions, and knowledge of all their employees of the subject Cameo Hotel when operating the hotel because these acts and omissions were committed in the course and scope of employment.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

82nd Hospitality, LLC ratified these acts and omissions because 82nd Hospitality, LLC Defendant failed to exercise reasonable care in the hiring, training, and supervision of these employees given the specific risks known and reported to 82nd Hospitality, LLC Defendant of sex trafficking occurring at the subject hotel location.

125. Despite having actual and/or constructive knowledge of widespread and ongoing sex trafficking at the subject location, 82nd Hospitality, LLC Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit and rape Plaintiff while she was a child.

126. 82nd Hospitality, LLC Defendant knew or were willfully blind to the fact that Plaintiff was a child who was being trafficked, beaten and raped and, because of this, benefited from continued association with her trafficker by providing him with a venue in the form of hotel rooms and related services, to harbor and facilitate Plaintiff's sexual exploitation.

127. 82nd Hospitality, LLC Defendant also facilitated widespread trafficking at their hotel location including the trafficking of Plaintiff, as a minor, in various ways including:

a. Allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front line staff regarding issues related to human trafficking;

b. Inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

c. Choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and laws; and

d. Implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

without concern for detection or interference by hotel staff.

**82nd Hospitality, LLC Defendant's Knowledge of Sex Trafficking**

128. 82nd Hospitality, LLC Defendant's owners, management and employees knew trafficking was going on at their hotel generally and they knew this about Plaintiff specifically.

129. Jane Doe's trafficker would rent rooms at the Cameo Hotel for the specific use of trafficking and victimizing Jane Doe.

130. Jane Doe was just a teenager when the trafficking started at the Cameo Hotel. Hotel staff and management saw Jane Doe, knew she was a minor and saw all the red flags of commercial sex.

131. Jane Doe was not only trafficked at this location between March 2014 and June 2014 by physical force, she was also a minor that was raped multiple times a day by older men at this location who bought her. Motel staff would have recognized her as she returned multiple times during the months she was trafficked with the same trafficker and showing the same red flags of commercial sex and trafficking.

132. During check-in Jane Doe was forced to wait in the car while her trafficker checked-in. Upon information and belief, the rooms were usually registered in his name but there were times when other names and IDs may have been used.

133. After check-in, Jane Doe's trafficker would escort her to the rented room. While being escorted, Jane Doe looked young, scared, timid and controlled.

134. While at the hotel property, Jane Doe looked like a child, because she was a child. Staff would see her with her trafficker, who was much older than her.

135. During the times that sex buyers would come to the hotel to have sex with Jane Doe for money, Jane Doe's trafficker would either wait right outside of the hotel room or be in the parking lot where he could see the room.

136. Upon information and belief, the exchange of money for sex with Jane Doe happened



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

right outside of the room with her trafficker before the sex buyer would enter to rape her. This would have been done in plain sight of hotel staff and employees.

137. Jane Doe and her trafficker would come and go at the subject Cameo Hotel for days at a time, leave for a short period of time and then return for another rental.

138. Multiple unregistered adult male visitors arrived at and departed from Jane Doe's room in rapid succession at all hours of the day and night, in a pattern consistent with commercial sex buyer activity.

139. When an adult buyer would come, Jane Doe's trafficker would leave the room, wait nearby, and then return as soon as the sex buyer would leave. This activity happened multiple times a day for the entirety of their stay. This activity would happen each time they would return to this location.

140. Jane Doe appeared physically tired, visibly distressed, malnourished, and under coercive control of a third party adult male throughout her time at the Cameo Hotel. She was clearly underage in distress and being sold for sex to adult men. She was raped multiple times a day during each stay, for months.

141. Jane Doe's trafficker carried a firearm either on him or in his car and would use it as a tool of intimidation and control while at the Cameo Hotel.

142. Hotel management and ownership were directly complicit in the trafficking operation and child exploitation.

143. Upon information and belief, Jane Doe was not the only victim being exploited at the Cameo Hotel. It is believed that other traffickers were using the Cameo Hotel for their trafficking operation as well. Additionally, Jane Doe's trafficker had other females that were being trafficked.

144. Use of the subject Cameo Hotel property for sex trafficking was well known to 82nd Hospitality, LLC. Upon information and belief, 82nd Hospitality, LLC monitored criminal activity occurring at the hotel and were aware of activity indicating commercial sex, sex



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

trafficking, child exploitation, and related crimes.

145. Upon information and belief, 82nd Hospitality, LLC knew staff were facilitating sex trafficking, at the subject location, and that it was generating revenue through policies that encouraged sex traffickers to operate at their properties, including but not limited to not implementing policies and procedures known to be necessary to stop known trafficking; not requiring identification cards; allowing daily payments of cash for extended stays; complying with requests for rooms to be rented away from other guests; allowing traffickers to escort young, scared girls to rooms without ID; allowing several buyers to come in and out of the rooms where victims were being trafficked and raped in without IDs; ignoring yelling and sounds of sex coming from rooms where a minor, our client, was being held captive; not addressing signs of trafficking and abuse; forming relationships with traffickers and treating traffickers like "regulars"; and not reporting the trafficking or taking any steps to prevent or stop it.

146. Information was available to 82nd Hospitality, LLC through news stores that establish the entrenched and pervasive nature of the hospitality industry's role in providing a venue where sex trafficking has continued unabated for years.

147. Upon information and belief, other females were trafficked by Plaintiff's trafficker at the same hotel and at the same time as Plaintiff.

148. Upon information and belief, other traffickers were also trafficking other victims at the subject Cameo Hotel at the same time as Plaintiff.

149. Sex buyers were violent with Jane Doe during the times they raped her. There was loud beatings or banging of the bed. Sex buyers would get loud during the sexual encounters. Plaintiff was strangled multiple times while being violently raped by buyers. Cameo Hotel staff and employees would have heard the attacks and violence coming out of the rooms rented at this location. They would have heard the sexual encounters, rape, happening in the rooms being rented by Plaintiff's trafficker.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

150. Upon information and belief, hotel staff and management were personally acquainted with Jane Doe's trafficker and recognized him as a repeat customer. They knowingly provided rooms to him with an awareness of the commercial sex activity and specifically sex trafficking of a minor.

151. Jane Doe was beaten, punched, strangled and kicked at this property. Her screams and cries for help went unanswered. This abuse was loud and would have been heard by hotel staff and patrons.

152. Cameo Hotel owners, managers and employees knew Jane Doe was a minor, they saw all the red flags of commercial sex and trafficking, yet they chose to continue to rent rooms to her trafficker.

**CAUSES OF ACTION AGAINST**

**Cause of Action 1:**

**Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (all Defendants)**

153. Plaintiff JANE DOE realleges and incorporates the allegations in paragraphs 1 through 152.

154. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

155. Plaintiff was a minor child at the time of sex trafficking at Defendant's subject motels.

156. Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals, including Plaintiff JANE DOE, knowing or in reckless disregard of the fact that she was a minor and that the victim would be caused, through force, coercion, or



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

157. Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages as a direct and proximate result of being trafficked and sexually exploited at the Defendants' hotel properties.

**Cause of Action 2:**

**Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

158. Plaintiff JANE DOE realleges and incorporates the allegations in Paragraphs 1 through 152, and 153 through 157.

159. Plaintiff JANE DOE is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

160. Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and traffickers, including Plaintiff JANE DOE's traffickers, despite the fact that each defendant knew or should have known that these traffickers were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2) at Defendants' properties alleged in this Complaint.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

As more specifically alleged above, Defendants took part in common undertakings and enterprises involving risk and potential profits, and here, actual profits resulted. Defendants' employees and agents had a direct association with the hotel employee traffickers and the non-hotel-employee traffickers, and knowingly facilitated the traffickers, which, as shown more thoroughly in the incorporated allegations above, showed a continuous business relationship between the traffickers and Defendants such that the pattern of conduct appears to be a tacit agreement between them. Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

161. Through the acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with each other and/or the non-employee traffickers regarding the operations of its respective hotel properties even though each knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

162. Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Plaintiff JANE DOE to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

## Cause of Action 3:

## Cause of Action: Vicarious Liability for TVPRA Violations (As to Vantage Hospitality Group, Inc).

163. Plaintiff JANE DOE realleges and incorporates the allegations in Paragraphs 1 through 152, and 153 through 157, and 158 through 162.

164. Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

165. Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

166. Vista Hospitality, LLC acted as the actual agents of Vantage Hospitality, Inc when operating its respective hotel property and in committing the wrongful acts and inactions alleged herein.

167. Through the wrongful acts and omissions described throughout this Complaint, Vantage Hospitality, Inc exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel properties.

168. Vantage Hospitality, Inc is vicariously liable for the TVPRA violations of its franchisees, and the subagents of such franchisees.

169. Additionally, on information and belief, Vantage Hospitality, Inc participated in a joint venture operating the subject America's Best Value Inn & Suites location. Vantage Hospitality, Inc and Vista Hospitality, LLC had highly integrated operations at their respective motel, shared revenue and profits generated from the motel, and exercised mutual control over the venture at the motel. They functioned as a single integrated entity and/or as alter-egos of one another and are therefore each directly and proximately liable for the harms and damages caused to Plaintiff JANE DOE as a result.

## Cause of Action 4:

## Child Abuse Victims Rights Act (CAVRA), 18 U.S.C. § 2255 (all Defendants)

170. Jane Doe realleges and incorporates the allegations in paragraphs 1 through 169 as if fully set forth herein.

171. Plaintiff was a minor pursuant to 18 U.S.C. § 2255(a) when she was trafficked, abused and raped at the subject motel properties.

172. Plaintiff was the victim of violations of 18 U.S.C. § 1589, 1590, and 1591, and suffered personal injury pursuant to 18 U.S.C. § 2255(a) as a result of those violations.

173. Plaintiff is a "person" who "ha[d] not attained the age of 18 years" pursuant to 18 U.S.C. § 1591(a)(2).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

174. Defendants knew that means of force, threats of force, fraud, coercion, or any combination of those means would be used to cause Plaintiff to engage in a commercial sex act, pursuant to 18 U.S.C § 1591(1)(2).

175. Defendants knowingly "harbored" and/or "maintained" Plaintiff, pursuant to 18 U.S.C. § 1590(a)(1), by providing her and her trafficker rooms in hotels affecting interstate commerce where authorities were unlikely to discover the injuries being sustained by Plaintiff.

176. Defendants knowingly benefited, financially or by receiving anything of value, from participation in a venture that recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff to engage in commercial sex acts.

177. Defendants are jointly and severally liable to Plaintiff for compensatory damages and for punitive damages, in the amount to be determined at trial, together with interest and attorney's fees and costs.

**Cause of Action 5:**

**Negligence/Premises Liability (all Defendants)**

178. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 177 as if fully set forth herein.

179. All Defendants owed Plaintiff a duty of care to operate their businesses and maintain their properties in a manner that prevented foreseeable harm to Plaintiff, including without limitation in a manner that did not allow sex trafficking criminals to utilize said businesses to assault and/or sex traffic Plaintiff Jane Doe and other minor and adult victims.

180. Defendants breached their duty because they knew or should have known, that adults working as professional traffickers were using their businesses and motels to abuse, assault, advertise, and facilitate the sale of minor children and/or adult victims of





SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

commercial sex. Defendants were further negligent in their hiring, supervision, and failure to adequately train their employees and/or agents.

181. Defendants failed to take reasonable steps to protect or warn those victims, including Plaintiff, or otherwise prevent the foreseeable harm to Plaintiff arising out of use of Defendants' properties and businesses.

182. As a direct and proximate result of the foregoing misconduct, Plaintiff Jane Doe has suffered, and continues to suffer damages, including without limitation severe permanent emotional distress, humiliation, mental anguish, physical and mental pain and suffering, a decrease in her ability to enjoy life, past and future medical expenses, attorney's fees and costs, and other general and special damages, all in an amount to be determined at trial.

**Cause of Action: 6**

**Negligent and/or Intentional Infliction of Emotional Distress (all Defendants)**

183. Jane Doe realleges and incorporates the allegations in Paragraphs 1 through 182 as if fully set forth herein.

184. Defendants engaged in extreme and outrageous conduct by knowingly and/or negligently allowing traffickers to advertise and facilitate the sale of minor children, including Plaintiff, for commercial sex through their respective businesses and/or at their motels.

185. As a result of this extreme and outrageous conduct, countless persons used Defendant's businesses and hotels to gain access to minors to sexually abuse and have commercial sex with Plaintiff, while she was a child.

186. All Defendants knew or should have known that this extreme and outrageous conduct would inflict severe emotional and mental distress on Plaintiff, a minor victim, and Plaintiff did in fact suffer severe and permanent emotional and mental injuries as a result. Plaintiff's damages include but are not limited to severe mental anguish, humiliation, and emotional and physical injuries and distress, in an amount to be proven



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

at trial.

**Cause of Action: 7**

**Trafficking in Persons — Civil Action Under ORS 30.867 (All Defendants)**

187. Plaintiff JANE DOE realleges and incorporates the allegations in paragraphs 1 through 186 as if fully set forth herein.

188. Plaintiff JANE DOE was injured by conduct that violated ORS 163.266. A person commits trafficking in persons under ORS 163.266(1)(c) when the person knowingly recruits, entices, harbors, transports, provides, or obtains another person, or attempts to do so, knowing or recklessly disregarding that the other person is under 18 years of age and will be used in a commercial sex act. (Or. Rev. Stat. Ann. § 163.266) Plaintiff was sixteen years old and was harbored and used in commercial sex acts at Defendants' properties.

189. A person also commits trafficking in persons under ORS 163.266(2) when the person knowingly benefits financially or receives something of value from participation in a venture that involves an act prohibited by ORS 163.266(1), ORS 163.263, or ORS 163.264. (Or. Rev. Stat. Ann. § 163.266) Through the acts and omissions alleged throughout this Complaint, each Defendant knowingly benefited financially and received things of value — including room-rental revenue — from participation in a venture it knew or recklessly disregarded was engaged in the trafficking of Plaintiff, a minor, for commercial sex.

190. The trafficking of Plaintiff also involved subjecting her to involuntary servitude within the meaning of ORS 163.263 and ORS 163.264, in that her trafficker forced her to engage in and continue to engage in commercial sex acts by instilling in her a fear of physical harm, by threatening and causing serious physical injury, and by physically restraining and threatening to restrain her. (Or. Rev. Stat. Ann. § 163.264); Or. Rev. Stat. Ann. § 163.263)

191. Defendants' conduct was unlawful under ORS 163.266, and Plaintiff was injured as



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

a direct and proximate result.

**Cause of Action: 8**

**Negligent Hiring, Supervision, and Retention (All Defendants)**

192. Plaintiff JANE DOE realleges and incorporates the allegations in paragraphs 1 through 191 as if fully set forth herein.

193. Defendants' employees and agents came into contact with members of the public, including Plaintiff, in the course of operating the subject hotels. An employer whose employees come into contact with the public owes a duty to exercise reasonable care in the selection, supervision, and retention of those employees, and is liable for placing an employee with known or reasonably discoverable dangerous propensities in a position where it is foreseeable the employee could injure the plaintiff in the course of the work.

194. Each Defendant knew or, through the exercise of reasonable care, should have known — by imputation of the knowledge its agents acquired within the scope of their employment — that its staff at the subject properties were facilitating, participating in, or ignoring the sex trafficking of minors, including Plaintiff, on the premises.

195. Each Defendant breached its duties of reasonable care in hiring, supervision, and retention by failing to adequately screen, train, supervise, and discipline its staff regarding the known risks of sex trafficking; by failing to enforce its own policies and procedures concerning safety, security, and the identification and reporting of trafficking; and by retaining staff who facilitated or ignored the trafficking of Plaintiff.

196. It was reasonably foreseeable that Plaintiff would come into contact with Defendants' employees and agents as a result of their employment, and that Defendants' failure to exercise reasonable care in hiring, supervising, and retaining those employees would result in the type of harm Plaintiff suffered.

197. As a direct and proximate result of Defendants' negligent hiring, supervision, and retention, Plaintiff suffered and continues to suffer severe and permanent physical,



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

emotional, and psychological injuries, and economic and non-economic damages, in an amount to be determined at trial.

**ELIMINATION AND/OR EQUITABLE AND STATUTORY TOLLING OF STATUTES OF LIMITATIONS, DISCOVERY RULE, AND CONTINUING VIOLATIONS DOCTRINE**

198. To the extent Defendants assert an affirmative defense under the statute of limitations, Plaintiff asserts that her claims are timely under statute, the discovery rule, equitable doctrines including tolling, delayed accrual principles, and tolling for minors.

199. At the time Plaintiff was harmed and for the duration of her trafficking, Plaintiff was held in captivity and under coercion and control of her trafficker who threatened, manipulated and allowed for the rape of her again and again.

200. Due to Defendant's conduct set forth herein, including knowingly facilitating and/or benefitting from the sexual abuse and sex trafficking of Plaintiff as a minor child Plaintiff suffered and continues to suffer severe emotional and psychological damages, and related damages proximately caused by the sexual harassment and sexual abuse. Plaintiff's damages and injurie are significant and ongoing.

201. Upon information and belief, Defendants Vantage Hospitality Group, Inc and Vista Hospitality, LLC acted in concert with each other and Plaintiff's trafficker to conceal the danger that Plaintiff's trafficker posed to children, including Plaintiff, so Defendants could continue to financially benefit from the trafficking activities taking place at the subject America's Best Value Inn & Suites.

202. Upon information and belief, Defendant 82nd Hospitality, LLC acted in concert with Plaintiff's trafficker to conceal the danger that Plaintiff's trafficker posed to children, including Plaintiff, so Defendant could continue to financially benefit from the trafficking activities taking place at the subject Cameo Hotel.

203. Thus, Plaintiff did not discover and could not have reasonably discovered the legal



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

cause of her injuries more than ten years before she filed this lawsuit. While she was under the control of her traffickers, Plaintiff—through no fault of her own—lacked the information to bring claims because she did not know both her injuries and the cause of her injuries. This lack of information was due to no fault on the part of the Plaintiff but rather was the direct result of Plaintiff being kept under the control of her trafficker, which Defendants facilitated.

204. At the time Plaintiff was harmed, she did not know that she was the victim of human trafficking as defined by law, that her injuries arose from being trafficked at Defendant's hotels or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injuries, more than ten years before suit was filed.

205. As a result of her continuous trafficking at the subject hotels, Plaintiff was beaten, sexually assaulted, and psychologically abused. She lacked the mental capacity to recognize the extent and scope of her injuries or those responsible particularly those who financially benefited from her trafficking but may not have been seen to be directly involved. In addition, due to the extreme trauma and psychological harm she endured during her trafficking, Plaintiff did not understand what had happened to her for years after she escaped her traffickers. Trafficked persons often experience extreme forms of trauma over long periods of time, their capacities both to understand what has happened to them and to describe their experiences are directly impaired as a result of such abuse. Victims can find that it is difficult to make personal sense of the abuse they have experienced, much less try to explain it to the authorities.[13]

206. Also, as a result of being a victim of trafficking, Plaintiff faced extraordinary circumstances, which arose through no fault of her own, that prevented her from pursuing

[13] Gallant Fish, *No Rest for the Wicked: Civil Liability Against Hotels in Cases of Sex Trafficking,* 23 Buff. Hum. Rts. L. Rev. 119, 127-28 (2017) (describing devastating impacts of sex trafficking on trafficking survivors).

her legal remedies including but not limited to the filing of a lawsuit, and those circumstances did not end more than 10 years before Plaintiff filed this lawsuit. Plaintiff's claims are timely and do not result in prejudice to Defendants.

207. During the time of trafficking, Plaintiff was under the continuous control of her trafficker. As a result she did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights. This continuous trafficking resulted from Defendants continuous facilitating of trafficking at the subject hotel locations named herein and Defendants ongoing trafficking venture with one another and with Plaintiff's criminal trafficker.

208. Even after Plaintiff escaped her trafficker, she remained a minor for more than two years.

209. Even after Plaintiff escaped her trafficker, she remained and remains in fear for her life and the possibility of being located and re-trafficked. Plaintiff's trafficker repeatedly threatened her throughout the trafficking period. Plaintiff does not dismiss those threats; she knows firsthand the power, reach, and violence of her trafficker and his associates and the life-altering harm they are capable of inflicting.

210. The trauma of Plaintiff's trafficking as a minor persisted long after her escape and continues even today. She remained hypervigilant and fearful, even today she finds herself looking over her shoulder for him, who had monitored and controlled nearly every aspect of her life. Even today, Plaintiff struggles to trust others and remains acutely aware of her surroundings. She is constantly afraid that her trafficker will look or is looking for her.

211. Plaintiff feared that, for years after her escape, her trafficker would come to find her. She still has this fear.

212. After enduring months of rape, sexual assault, physical abuse, coercion, and threats, Plaintiff remained under the shadow of her trafficker's control years after her escape. Once Plaintiff began to realize what she had endured, she reasonably believed that any public



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

disclosure of her trafficking, including identifying the hotels involved and the conduct that occurred there, could expose her and her family to retaliation.

213. These circumstances, trauma and fear, which was grounded in the reality of the horror of Plaintiff's trafficking and ongoing risk to her and her family, along with the psychological trauma and impact from that trauma prevented Plaintiff from filing suit for years after her escape.

214. Plaintiff's claim under ORS 30.867 is timely. The conduct giving rise to this claim constitutes child sexual abuse within the meaning of ORS 12.117, which defines child sexual abuse to include the sexual exploitation of a child, including allowing, permitting, encouraging, or hiring a child to engage in prostitution or commercial sexual solicitation. (Or. Rev. Stat. Ann. § 12.117) An action based on child sexual abuse, or on conduct allowing, permitting, or encouraging child sexual abuse, may be commenced at any time. ORS 12.117(1)(b). (Or. Rev. Stat. Ann. § 12.117) Because Plaintiff was a child subjected to and commercially sexually exploited through trafficking, and because Defendants allowed, permitted, and encouraged that exploitation, no limitations period bars this claim.

215. The statute of limitations for Plaintiff's claims concerning and arising out of childhood sex abuse and sex trafficking are subject to equitable tolling and/or are tolled by statute, including without limitation pursuant to ORS 12.117 and/or have been eliminated pursuant to 18 U.S.C. § 2255(a).

## <u>JOINT AND SEVERAL LIABILITY</u>

216. "Joint and several liability 'applies when there has been a judgment against multiple defendants.'"[14] If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff JANE DOE recover only once for the full amount.[15]

---

[14] *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 220–21 (1994).

[15] See 735 ILCS 5/2-1117; see Restatement (Second) of Torts § 875 (1977); *Honeycutt v. United States*, 137 S. Ct. 1626 (2017).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

217. Federal law allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, without regard to his proportion of fault and even if the concurrent negligence of others contributed to the incident.[16]

218. Plaintiff JANE DOE alleges Defendants, and each of them, should be held jointly and severally liable to her for the totality of her injuries and damages alleged herein.

**DAMAGES**

219. Defendants' wrongful acts and omissions described above, individually and collectively, proximately and legally caused Plaintiff JANE DOE to sustain legal damages.

220. Plaintiff JANE DOE did suffer the following injuries as a direct and proximate result of Defendants', and each of their, wrongful actions and inactions alleged herein, and as such Plaintiff JANE DOE is entitled to be compensated for past and future personal injuries, non-economic damages, and economic damages, see, e.g., 18 U.S.C. §§ 1593, 1595, including:

a. actual damages;
b. direct damages;
c. incidental and consequential damages;
d. lost earnings and lost earning capacity;
e. necessary medical expenses;
f. life care expenses;
g. physical pain and suffering;
h. physical impairment;
i. mental anguish and emotional distress damages (until trial and in the future);

[16] *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) (citations omitted); *Manganiello v. City of New York*, No. 07 Civ. 3644, 2008 WL 2358922 (S.D.N.Y. June 10, 2008), affirmed, 612 F.3d 149 (2nd Cir. 2010).



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953

j. restitution;

k. unjust enrichment;

l. disgorgement of profits; and

m. Plaintiff JANE DOE is entitled to pre- and post-judgment interest at the maximum legal rates.

**PUNITIVE DAMAGES**

221. Plaintiff JANE DOE is entitled to punitive damages under the applicable statutes against Defendants, and each of them, for each and every cause of action alleged herein, as a result of Defendants' outrageous, wanton, willful, and malicious conduct underlying Plaintiff JANE DOE's claims. See *Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011).

**ATTORNEY FEES**

222. Plaintiff JANE DOE is entitled to recover her costs and reasonable, necessary, or customary attorneys' fees from Defendants under the applicable statutes. See 18 U.S.C. § 1595(a).

223. All conditions precedent to Plaintiff JANE DOE's recovery of its costs and attorneys' fees have occurred or will occur prior to entry of judgment in this suit.

**JURY DEMAND**

224. Plaintiff JANE DOE requests a jury trial in this action.

**PRAYER**

225. For these reasons, Plaintiff JANE DOE prays that this case be set for trial before a jury, and that upon a final hearing of the cause, judgment be entered for Plaintiff JANE DOE against Defendants jointly and severally, for:

a. all economic damages to which she is entitled;

b. all actual damages to which she is entitled;

c. all incidental and consequential damages to which she is entitled;

d. all mental anguish and emotional distress damages to which she is entitled;

e. all restitution damages to which she is entitled;

f. all disgorgement of profits to which she is entitled;

g. all unjust enrichment damages to which she is entitled;

h. exemplary, treble, and/or punitive damages;

i. attorneys' fees and costs of suit;

j. pre-judgment and post-judgment interest at the highest rate allowed by law; and

k. all other relief to which she is entitled in law or in equity.

SINGLETON SCHREIBER, LLP

Dated: September 30, 2026

By: /s/ Vanessa Waldref

Vanessa Waldref (OSB 261613)
Meagan Dove (CA 31311)
Katie Llamas (CA 303983)
Alexia Palacios-Peters (CA 263576)
Attorneys for Plaintiff



SINGLETON SCHREIBER
591 CAMINO DE LA REINA, SUITE 1025
SAN DIEGO, CA 92108
619-255-4953